ORIGINAL SEALED



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | NO. |
| v. | |
| BRIAN CARPENTER, D.P.M. (01)<br>JERRY HAWRYLAK (02) | FILED UNDER SEAL<br><br>**3-19CR-452-X** |

# INDICTMENT

The Grand Jury charges that:

## General Allegations

At all times material to this indictment,

## TRICARE

1. TRICARE was a health care program of the U.S. Department of Defense (DoD) that provided health care coverage to DoD active duty service members, National Guard and Reserve members, retirees, their dependents, and their survivors. TRICARE was a health care benefit program as defined by 18 U.S.C. § 24(b). Individuals who received health care benefits through the TRICARE program were known as TRICARE beneficiaries.

2. TRICARE was overseen and administered by the Defense Health Agency (DHA) at the DoD.

3. Express Scripts, Inc. (Express Scripts) administered TRICARE's prescription drug benefits.

Indictment—Page 1

4. TRICARE paid for medically necessary services and supplies that were required in the diagnosis and treatment of illness or injury. TRICARE-covered benefits included specified medical services and supplies, such as pharmaceuticals, that eligible beneficiaries received from authorized civilian sources.

## Compounded Medications (Generally)

5. In general, compounding was a practice in which a licensed pharmacist, among others, combined, mixed, or altered ingredients of a drug or multiple drugs to create a drug tailored to meet the medical needs of an individual patient.

6. Compounded drugs are not approved by the U.S. Food and Drug Administration (FDA). In other words, the FDA did not verify the safety, potency, effectiveness, or manufacturing quality of compound drugs. The Texas State Board of Pharmacy regulates the practice of compound pharmaceuticals in the State of Texas.

7. Compounded drugs may be prescribed by a physician when a commercially available or FDA-approved drug does not meet the health needs of a particular patient. A patient may, for example, have a specific condition that would be generally treated by an FDA-approved drug but such a drug may not be appropriate for the patient because he or she may be allergic to a specific ingredient, such as a dye or preservative, in that drug. In that scenario, the patient may be prescribed a compounded drug that excludes whatever ingredient or aspect that prevents that patient from otherwise using the FDA-approved drug. A patient may also, for example, be unable to take an FDA-approved drug for a medical condition because he or she cannot consume such drugs by traditional means, such as swallowing. In that scenario, the patient may be prescribed a compounded drug

that allows the patient to take a medicine in another form, such as liquid or powder, so that he or she may consume it.

8. TRICARE would not pay claims submitted by a pharmacy for prescriptions for compounded drugs that TRICARE knew, among other things, were not medically necessary for the treatment of the beneficiary's specific medical needs.

## The Defendants and Related Entities

9. In or around the charged period, defendant **Brian Carpenter**, a resident of Wise County, Texas, was a licensed physician with a primary practice in podiatry and an office located at the University of North Texas Health Science Campus Health Pavilion, 855 Montgomery St., Fort Worth, Texas.

10. In or around the charged period, defendant **Jerry Hawrylak**, a resident of Tarrant County, Texas, was a patient recruiter for Pharmacy A, a compounding pharmacy operating in Fort Worth, Texas.

11. In or around the charged period, Pharmacy A filled prescriptions for compounded medications that prescribing physicians wrote for TRICARE beneficiaries and submitted claims for these compounded medications to TRICARE for reimbursement.

12. In or around the charged period, Person A and Person B were patient recruiters for Pharmacy A.

13. In or around the charged period, Company A was a business owned and operated by Person A and Person B in and around Fort Worth, Texas.

## The Fraudulent Scheme

### Overview of the Scheme

14. **Brian Carpenter** and **Jerry Hawrylak** unlawfully submitted and caused to be submitted false and fraudulent claims to Federal health care benefit programs for prescriptions for compounded drugs, prescribed for, among others, members of the armed forces. Federal health care benefit programs paid millions of dollars on these false and fraudulent claims. These prescriptions, as **Brian Carpenter** and **Jerry Hawrylak** knew and intended, were, among other things, not legitimately prescribed, not needed, not used, and induced through the payment and receipt of unlawful kickbacks and bribes.

15. Over the course of, and furtherance of, the fraudulent scheme, which began no later than in or about November 2014 and continued until in or about January 2017, the exact dates being unknown to the Grand Jury, **Brian Carpenter**, **Jerry Hawrylak**, and others known and unknown to the Grand Jury, submitted and caused the submission of approximately $8,468,813.12 in false and fraudulent claims to TRICARE for compounded medications that were not legitimately prescribed, not needed, not used, and induced through the payment and receipt of unlawful kickbacks and bribes.

### Object/Purpose of the Scheme

16. The object/purpose of the scheme was for the defendants and others known and unknown to the Grand Jury to unlawfully enrich themselves by submitting and causing the submission of false and fraudulent claims to TRICARE for health care benefits. The false and fraudulent claims were for compounded medications that were

not legitimately prescribed, not needed, not used, and induced through the payment and receipt of unlawful kickbacks and bribes.

## Execution of the Scheme

17. **Brian Carpenter** signed prescriptions and refills for compounded medications for TRICARE beneficiaries without seeing or examining them, and without determining their need for compounded medications.

18. **Jerry Hawrylak** recruited TRICARE beneficiaries and physicians to generate illegitimate prescriptions for compounded medications that oftentimes the beneficiaries did not need or use.

19. **Jerry Hawrylak**, Person A, Person B, and others referred prescriptions signed by **Brian Carpenter** to Pharmacy A to fill and then bill to TRICARE for reimbursement.

20. For beneficiaries who resided outside the state of Texas, including those beneficiaries referenced in Counts Two through Five of the indictment, and others, **Jerry Hawrylak** and **Brian Carpenter** utilized false Texas addresses on the compounded prescriptions.

21. Beneficiaries for whom Pharmacy A filled prescriptions signed by **Brian Carpenter**, including beneficiaries referenced in Counts Three, Four, and Five of the indictment, and others, never received any compounded medication. Instead, beneficiaries for whom Pharmacy A filled compounded prescriptions signed by **Brian Carpenter** oftentimes received vitamins or protein powder.

22. The compounded prescriptions signed by **Brian Carpenter** were faxed from a fax number associated with **Jerry Hawrylak's** office to Pharmacy A.

23. Pharmacy A paid Person A and Person B illegal kickbacks and bribes for each TRICARE prescription signed by **Brian Carpenter**. To facilitate and conceal the scheme, Person A and Person B paid **Jerry Hawrylak** a percentage of those illegal kickbacks and bribes through their business Company A. The percentage **Jerry Hawrylak** received from Company A was determined by the amount TRICARE reimbursed Pharmacy A for each filled prescription signed by **Brian Carpenter**. As a result, Company A, Person A, and Person B paid **Jerry Hawrylak** at least approximately $1.5 million in illegal kickbacks and bribes.

24. In turn, **Jerry Hawrylak** paid **Brian Carpenter** cash kickbacks and bribes for the illegitimate compounded prescriptions for TRICARE beneficiaries.

25. In or about December 2015 or January 2016, the TRICARE program audited **Brian Carpenter** and requested the underlying medical records to substantiate the prescriptions that he signed for TRICARE beneficiaries. To facilitate and conceal the scheme, **Jerry Hawrylak**, Person A, and Person B provided **Brian Carpenter** with beneficiary information maintained by Pharmacy A, which **Brian Carpenter** utilized in his response to the audit to misrepresent that he had spoken with every beneficiary before signing a prescription for compounded medication, and that every beneficiary for whom he prescribed compounded medication resided in the state of Texas.

26. Over the course of the conspiracy, Pharmacy A billed TRICARE for compounded medications prescribed by **Brian Carpenter**, referred by **Jerry Hawrylak**,

and purportedly provided to TRICARE beneficiaries who resided in Dallas County, Texas.

27. In furtherance of the scheme, and to accomplish its purpose, the conspirators committed, and caused to be committed, the submission of the false and fraudulent claims reflected in Counts Two through Seven.

## Count One
### Conspiracy to Commit Health Care Fraud
### (Violation of 18 U.S.C. § 1349 (18 U.S.C. § 1347))

28. The Grand Jury re-alleges and incorporates by reference all previous paragraphs as if fully alleged herein.

### The Conspiracy

29. From in or about November 2014 and continuing to in or about January 2017, the exact dates being unknown to the Grand Jury, in the Dallas Division of the Northern District of Texas and elsewhere, **Brian Carpenter** and **Jerry Hawrylak** did knowingly and willfully combine, conspire, confederate, and agree with Person A, Person B, and other persons known and unknown to the Grand Jury to violate 18 U.S.C. § 1347, that is, to knowingly and willfully devise and execute, and attempt to execute, a scheme and artifice to defraud TRICARE, a health care benefit program as defined in 18 U.S.C. § 24(b), and to obtain money and property owned by, and under the custody and control of, TRICARE, by means of materially false and fraudulent pretenses, representations, and promises in connection with the delivery of, and payment for, health care benefits, items, and services in violation of 18 U.S.C. § 1349.

### The Object/Purpose of the Conspiracy

30. The Grand Jury re-alleges and incorporates Paragraph 16 as a description of the object/purpose of the conspiracy.

### The Manner and Means of the Conspiracy

31. In furtherance of the conspiracy and to accomplish its object/purpose, the methods, manners, and means that were used are described in paragraphs 14 through 27, and incorporated by reference as though set forth fully therein.

### Counts Two Through Seven
### Health Care Fraud
### (Violation of 18 U.S.C. §§ 1347 and 2)

32. The Grand Jury re-alleges and incorporates by reference all previous paragraphs as if fully alleged herein.

33. From in or about November 2014 and continuing to in or about January 2017, the exact dates being unknown to the Grand Jury, in the Dallas Division of the Northern District of Texas and elsewhere, **Brian Carpenter** and **Jerry Hawrylak** did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud TRICARE, a health care benefit program as defined in 18 U.S.C. § 24(b), and to obtain by means of materially false and fraudulent pretenses, representations, and promises in connection with the delivery of, and payment for, health care benefits, items, and services, by submitting or causing the submission of false and fraudulent claims to TRICARE for compounded medications, that were, among other things, not medically necessary and prescribed without any physician-patient relationship.

34. On or about the dates specified below, in the Dallas Division of the Northern District of Texas, and elsewhere, **Brian Carpenter** and **Jerry Hawrylak**, aided and abetted by others, and aiding and abetting others known and unknown to the Grand Jury, submitted or caused to be submitted, the following false and fraudulent claims to TRICARE for compounded medications that were, among other things, not medically necessary and prescribed without any physician-patient relationship, in execution of the scheme described in Paragraph 33, with each claim forming a separate count:

| Count | TRICARE Beneficiary | Approx. Date of Claim | RX No. | Approx. Amount Billed | Approx. Amount Paid |
|---|---|---|---|---|---|
| 2 | J.C. | 2/27/2015 | *18108 | $21.512.15 | $18,367.35 |
| 3 | S.L. | 3/12/2015 | *20526 | $21,512.15 | $18,367.35 |
| 4 | N.K. | 3/19/2015 | *22230 | $21,512.15 | $18,367.35 |
| 5 | H.L. | 4/8/2015 | *26266 | $21,512.15 | $18,347.35 |
| 6 | C.F. | 4/21/2015 | *13300 | $21,512.15 | $18,347.35 |
| 7 | E.F. | 4/29/2015 | *13833 | $21,512.15 | $18,367.35 |

All in violation of 18 U.S.C. §§ 1347 and 2.

## Forfeiture Notice
## (18 U.S.C. §§ 981(a)(1)(C), 982(a)(7) and 28 U.S.C. § 2461(c))

35. Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of Count One, the defendants, **Brian Carpenter** and **Jerry Hawrylak,** shall forfeit to the United States, any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

36. Pursuant to 18 U.S.C. § 982(a)(7), upon conviction of Counts Two through Seven, the defendants, **Brian Carpenter** and **Jerry Hawrylak,** shall forfeit to the United States, any property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

37. Pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), if any of the property described above, as a result of any act or omission of a defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred, sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

the United States intends to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

BRIAN CARPENTER D.P.M. (01)
JERRY HAWRYLAK (02)

INDICTMENT

18 U.S.C. § 1349 (18 U.S.C. § 1347)
Conspiracy to Commit Health Care Fraud
(Count 1)

18 U.S.C. §§ 1347 and 2
Health Care Fraud
(Counts 2-7)

18 U.S.C. §§ 981(a)(1)(C), 982(a)(7) and 28 U.S.C. § 2461(c)
Forfeiture Notice

7 Counts

A true bill rendered

---

DALLAS                                                                                   FOREPERSON

Filed in open court this 11 day of September, 2019.

---

**Warrant to be Issued for all Defendants**

---

UNITED STATES MAGISTRATE JUDGE
No Criminal Matter Pending

A TRUE BILL

_____
FOREPERSON

TANYA PIERCE
ATTORNEY FOR THE UNITED STATES,
ACTING UNDER AUTHORITY
CONFERRED BY 28 U.S.C. § 515

ROBERT ZINK
U.S. Department of Justice
Criminal Division, Fraud Section
Chief

ALLAN J. MEDINA
U.S. Department of Justice
Criminal Division, Fraud Section
Acting Deputy Chief, Health Care Fraud Unit

_____
BRYNN A. SCHIESS
Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice
Pennsylvania Bar No. 320654
1100 Commerce Street, Suite 300
Dallas, Texas 75242
Phone: (202) 374-3484
brynn.schiess@usdoj.gov